IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TEMESCAL WELLNESS OF      *
MARYLAND, LLC T/A EVERMORE
CANNABIS COMPANY,      *

     Plaintiff,      *          Civil Action No. GLR-20-3648

v.      *

FACES HUMAN CAPITAL, LLC, et al.,      *

     Defendants.      *

***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Christopher Cassese's Motion to Dismiss (ECF No. 33); Defendant Gareth Heyman's Motion to Dismiss (ECF No. 39); and Defendant Francis Voegler s/h/a Frances Voegler's Motion to Dismiss (ECF No. 40).[1] The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021). For the reasons outlined below, the Court will grant the Defendant Voegler's Motion and deny Defendants Cassese and Heyman's Motions as moot.

## I.      BACKGROUND[2]

Plaintiff Temescal Wellness of Maryland, LLC ("Temescal") operates a cannabis business in Baltimore City and Baltimore County, Maryland under the name Evermore

---

[1] The Court will direct the Clerk to amend the docket to reflect the proper spelling of Defendant Francis Voegler's name.

[2] Unless otherwise noted, the Court takes the following facts from the Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

Cannabis Company. (Compl. ¶¶ 6, 17, ECF No. 1). The factual allegations in Temescal's Complaint are brief. (Id. ¶¶ 18–23). According to Temescal, between March 1, 2018 and September 2018, it engaged Defendant Faces Human Capital, LLC ("Faces"), a now-bankrupt payroll business based in Denver, Colorado, "to process the payroll of [Temescal], move approved funds from [Temescal] to the Faces account(s) and from the Faces account(s), pay employees' taxes to the State and Federal Governments, pay employee benefits as directed and to initiate direct deposits to the bank accounts of [Temescal's] employees." (Id. ¶¶ 2, 7). Temescal alleges that around the end of August 2019 or the beginning of September 2019, it "learned that Faces failed to make the requisite deposits, including the State and Federal tax deposits," in excess of $115,000. (Id. ¶ 3). Temescal asserts that Faces used the money for its own benefit "and/or" for the benefit of the other named Defendants, namely (1) Christopher Cassese, a Colorado resident and "the CEO/Manager of Faces," (2) Francis Voegler, a Colorado resident and "a manager" of Faces, (3) Holly Leaf Sitienei, a Maryland resident and "an owner" of Faces, (4) Gareth Heyman, a Colorado resident and "an owner" of Faces, (5) B44, LLC, a Colorado corporation and "an owner" of Faces, (6) Wizard, LLC, a Colorado corporation and "an owner" of Faces, and (7) Theresa Collins, who is not otherwise identified but who allegedly resides in Colorado (collectively, "Defendants"). (Id. ¶¶ 3, 8–13).

Temescal alleges that between July and December 2019, "Defendants, collectively, spoke with Temescal and, multiple times, Defendants promised to repay the stolen money." (Id. ¶ 21). Ultimately Faces "failed to repay all funds" it owed Temescal "despite repeated demands and multiple promises to pay." (Id. ¶ 22). Temescal does not, however, offer any

other information about these payment discussions; the above details represent all of Temescal's factual allegations.[3]

On December 17, 2020, Temescal filed suit against Defendants in this Court. Temescal's Complaint alleges claims for breach of contract against Faces and Cassese (Count I); fraud against Faces and Cassese (Count II); conversion against all Defendants (Count III); unjust enrichment against all Defendants (Count IV); and civil conspiracy

---

[3] Below is the complete "Factual Allegations" section of Temescal's Complaint:

> 18. Faces is a national payroll and related services provider for the payroll industry. Faces contracts with multiple employers to process employee payrolls by handling the payroll funds to remit payment for Federal and State taxes, employee benefits and direct deposit by depositing those funds directly into the bank accounts of the clients' employees.

> 19. In the Spring of 2019, through investigation, [Temescal] learned and Faces admitted that Faces had failed to make employee related Federal and State tax and related deposits during the period of March 2018-September 2018 in excess of $115,000.

> 20. Faces, instead of paying Federal and State payroll and related tax payments, utilized Temescal's money, and the money of Temescal employees, for its own benefit and use.

> 21. From July 2019 through December 2019, Defendants, collectively, spoke with Temescal and, multiple times, Defendants promised to repay the stolen money.

> 22. Faces has failed to repay all funds due and owing to Temescal, despite repeated demands and multiple promises to pay Temescal.

> 23. Defendants' unlawful conduct has caused more than $115,000 in damages to Temescal, in addition to attorneys' fees and expenses that Temescal has incurred and will incur as a result of the ripple effect of Defendants' actions.

(Compl. ¶¶ 18–23).

against all Defendants (Count V). (Id. ¶¶ 24–56). Temescal seeks compensatory damages, punitive damages, interest, costs, and attorneys' fees. (Id. ¶¶ 30, 38–39, 45–46, 50–52, 56). Temescal also seeks a temporary restraining order, a preliminary injunction, a permanent injunction, and restitution of at least $135,000. (Id. ¶ 51).

Defendant B44, LLC filed a Motion to Dismiss on January 26, 2021 (ECF No. 13) and Temescal voluntarily dismissed all claims against it on February 11, 2021 (ECF No. 19). The Court approved the dismissal and denied B44, LLC's motion as moot on February 12, 2021. (ECF No. 20). Defendant Theresa Enebo Collins filed a Motion to Dismiss on February 4, 2021 (ECF No. 17) and Temescal dismissed all claims against her on February 22, 2021. (ECF No. 28). The Court approved the dismissal and denied Collins's motion as moot on February 22, 2021. (ECF No. 30). Temescal also voluntarily dismissed its claims against Defendants Holly Sitienei and Wizard, LLC on February 22, 2021. (ECF Nos. 26, 29). Presently, Temescal has active claims against Defendants Faces, Casesse, Voegler, and Heyman.

On March 4, 2021, Defendant Cassese filed a Motion to Dismiss (ECF No. 33) for failure to state a claim on which relief may be granted[4] and Temescal filed its Opposition on March 15, 2021 (ECF No. 38). To date, Cassese has not filed a Reply. On March 19, 2021, Defendant Heyman moved to dismiss for lack of personal jurisdiction and for failure to state a claim. (ECF No. 39). Temescal filed its Opposition on April 2, 2021 (ECF No.

---

[4] Defendant Cassese also preserved his defense of improper venue under Rule 12(b)(3). (Def. Cassese Mot. Dismiss at 2).

43) and Heyman filed his Reply on April 15, 2021 (ECF No. 47). Finally, on March 18, 2021, Defendant Voegler filed a Motion to Dismiss for lack of subject-matter jurisdiction, lack of personal jurisdiction, and failure to state a claim. (ECF No. 40). On March 26, 2021, Temescal filed its Opposition (ECF No. 41) and on April 9, 2021, Voegler filed his Reply (ECF No. 44).

On July 16, 2021, Temescal filed a Suggestion of Bankruptcy of Defendant Faces, (ECF No. 52), stating that Faces filed bankruptcy in May 2020. Temescal indicated that its notice was "without effect on any of [its] claims against parties other than Faces Human Capital, LLC," (Suggestion Bankruptcy Defendant Faces at 1, ECF No. 52), namely, Defendants Cassese, Voegler, and Heyman.

## II.     DISCUSSION

### A.     Standard of Review

#### 1.     Subject-Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject-matter jurisdiction. A defendant challenging a complaint under Rule 12(b)(1) may advance a "facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting 'that the jurisdictional allegations of the complaint [are] not true.'" Hasley v. Ward Mfg., LLC, No. RDB-13-1607, 2014 WL 3368050, at *1 (D.Md. July 8, 2014) (alteration in original) (quoting Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009)).

When a defendant raises a facial challenge, the Court affords the plaintiff "the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Kerns,

585 F.3d at 192 (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). As such, the Court takes the facts alleged in the complaint as true and denies the motion if the complaint alleges sufficient facts to invoke subject-matter jurisdiction.

With a factual challenge, the plaintiff bears the burden of proving the facts supporting subject-matter jurisdiction by a preponderance of the evidence. United States ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2009). In determining whether the plaintiff has met this burden, the Court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991) (citing Adams, 697 F.2d at 1219). Nevertheless, the Court applies "the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Id. (citing Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1559 (9th Cir. 1987)). The movant "should prevail only if the material jurisdictional facts are not in dispute and the [movant] is entitled to prevail as a matter of law." Id. (citing Trentacosta, 813 F.2d at 1558). Unlike under the summary judgment standard, however, the Court is permitted to decide disputed issues of fact, Kerns, 585 F.3d at 192, and weigh the evidence, Adams, 697 F.2d at 1219.

## 2. **Personal Jurisdiction**

Federal Rule of Civil Procedure 12(b)(2) governs motions to dismiss for lack of personal jurisdiction. When a non-resident defendant challenges a court's power to exercise jurisdiction, "the jurisdictional question is to be resolved by the judge, with the

burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs. Inc., 334 F.3d 390, 396 (4th Cir. 2003) (citing Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 59–60 (4th Cir. 1993)). "Yet when, as here, the district court decides a pretrial personal jurisdiction dismissal motion without an evidentiary hearing, the plaintiff need prove only a prima facie case of personal jurisdiction." Mylan Labs., 2 F.3d at 60 (citing Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)). In determining whether the plaintiff has proved a prima facie case of personal jurisdiction, the Court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." Id. (citing Combs, 886 F.2d at 676). Additionally, a court is permitted to consider evidence outside the pleadings when resolving a Rule 12(b)(2) motion. Structural Pres. Sys., LLC v. Andrews, 931 F.Supp.2d 667, 671 (D.Md. 2013) (citing Silo Point II LLC v. Suffolk Const. Co., 578 F.Supp.2d 807, 809 (D.Md. 2008)). The court does not have to "credit conclusory allegations or draw farfetched inferences" in deciding jurisdictional disputes. Rao v. Era Alaska Airlines, 22 F.Supp.3d 529, 534 (D.Md. 2014) (quoting Tharp v. Colao, No. WDQ-11-3202, 2012 WL 1999484, at *1 (D.Md. June 1, 2012)).

### 3.    Failure to State a Claim

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is

entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

**B.**     <u>Analysis</u>

**1.**     **Subject-Matter Jurisdiction**

Defendant Voegler argues that Temescal does not plead facts sufficient to establish diversity jurisdiction in its Complaint, leaving this Court without subject-matter jurisdiction to hear this matter. (Voegler Mot. Dismiss at 6). Voegler contends that "where a plaintiff is an 'unincorporated association,' such as an LLC, and alleges diversity jurisdiction, it bears the burden of alleging the citizenship of all of its members." (<u>Id.</u>). Voegler adds that Temescal did not "allege the citizenship of all of its members" for purposes of determining diversity and therefore the Court should dismiss Temescal's Complaint for lack of subject-matter jurisdiction. (<u>Id.</u> at 7). Temescal does not substantively respond to Voegler's 12(b)(1) argument but instead counters that the Court entered default with respect to Defendant Voegler and therefore we should not rule on Voegler's Motion to Dismiss until Voegler files a Motion to Set Aside the Judgment of Default under Rule 55(c). (Temescal Resp. Opp'n Def. Voegler Mot. Dismiss ["Temescal's Opp'n Voegler Mot."] at 1, ECF No. 41). Temescal's argument has since been rendered moot; Voegler filed a Motion to Vacate Default on April 9, 2021 (ECF No. 45), which the Court granted on April 12, 2021. (ECF No. 46).

Although only Defendant Voegler has raised the question of subject-matter jurisdiction, "a federal court has an independent obligation to assess" its power to hear a case. <u>Constantine v. Rectors & Visitors George Mason Univ.</u>, 411 F.3d 474, 480 (4th Cir. 2005). If a court determines that it does not have subject-matter jurisdiction over a dispute, "the court must dismiss the action." Fed.R.Civ.P. 12(h)(3). The statute providing for

federal diversity jurisdiction states that district courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a)(1). Diversity jurisdiction typically "requires complete diversity among the parties, meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant." Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC, 636 F.3d 101, 103 (4th Cir. 2011).

The United States Supreme Court has held that a limited partnership is a citizen of the state or states in which its partners are citizens. Carden v. Arkoma Assocs., 494 U.S. 185, 195 (1990); JBG/JER Shady Grove, LLC v. Eastman Kodak Co., 127 F.Supp.2d 700, 701 (D.Md. 2001) (applying Carden, 494 U.S. at 195–96). "[D]iversity jurisdiction in a suit by or against [an artificial entity] depends on the citizenship of 'all the members.'" Carden, 494 U.S. at 195 (quoting Chapman v. Barney, 129 U.S. 677, 682 (1889)). Moreover, "when jurisdiction depends on citizenship, citizenship should be 'distinctly and affirmatively alleged.'" U.S. Agrisoil, LLC v. Kreloff, No. JKB-20-2454, 2021 WL 409789, at *2 (D.Md. Feb. 5, 2021) (quoting Toms v. Country Quality Meats, Inc., 610 F.2d 313, 316 (5th Cir. 1980)).

Here, Temescal fails to distinctly and affirmatively allege the citizenship of its own members. Further, Temescal fails to allege the citizenship of the members of Defendant Faces. In its Complaint, Temescal baldly asserts that this Court has jurisdiction to hear this matter, stating:

> 16. This Court has jurisdiction of this action pursuant to 28 USC § 1332(a)(1) in that this is an action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.
>
> 17. Venue is proper in the Northern District of Maryland as Temescal operates and maintains an ongoing business in Maryland, Faces conducted business in Maryland as a payroll company, and Sitienei is a resident of Maryland. Moreover, many of the acts or omissions that give rise to this claim occurred in Maryland.

(Compl. ¶¶ 16–17). But these statements are insufficient to adequately allege diversity jurisdiction in a case that involves two LLCs as named parties. Also, instead of attempting to remedy its failure, Temescal entirely ignores Defendant Voegler's jurisdictional argument in its Opposition. Accordingly, because Temescal has failed to provide the Court with necessary information regarding the members of the LLCs for diversity purposes, this action must be dismissed as to all Defendants for Temescal's failure to plead subject-matter jurisdiction.

Even if Temescal had adequately pleaded a basis for this Court's jurisdiction, however, its Complaint would fail for the reasons set forth below.

### 2.    Personal Jurisdiction

Both Voegler and Heyman allege that Temescal's Complaint must be dismissed because the Court lacks personal jurisdiction over them. (See Voegler Mot. Dismiss at 8; Heyman Mot. Dismiss at 3). At bottom, the Court agrees. In reviewing whether it has personal jurisdiction over a non-resident defendant, the Court looks to the state's long arm statute and tenets of due process:

> Before a court can exercise personal jurisdiction over a non-resident defendant, a court must determine that (1) the exercise of jurisdiction is authorized under the state's long-arm statute pursuant to Federal Rule of Civil Procedure 4(k)(1)(A), and (2) the exercise of jurisdiction conforms to the Fourteenth Amendment's due process requirements.

Under Armour, Inc. v. Battle Fashions, Inc., 294 F.Supp.3d 428, 432 (D.Md. 2018) (citing Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003)). Maryland courts "have consistently held that a state's long-arm statute is coextensive with the limits of personal jurisdiction set out by the Due Process Clause of the Constitution." Carefirst of Md., 334 F.3d at 396. To satisfy the first prong, the "plaintiff must specifically identify a provision in the Maryland long-arm statute that authorizes jurisdiction." Under Armour, 294 F.Supp.3d at 432 (citing Ottenheimer Publishers, Inc. v. Playmore, Inc., 158 F.Supp.2d 649, 652 (D.Md. 2001)). "[T]o the extent that a defendant's activities are covered by the statutory language, the reach of the statute extends to the outermost boundaries of the due process clause." Ottenheimer, 158 F.Supp.2d at 652 (quoting Joseph M. Coleman & Assoc., Ltd. v. Colonial Metals, 887 F.Supp. 116, 119 n.2 (D.Md. 1995)).

Temescal does not identify Maryland's long-arm statute in its Complaint, let alone the particular provision upon which it relies to provide the basis of its claim that this Court has personal jurisdiction over Defendants Voegler and Heyman. Moreover, as was the case with Defendant Voegler's 12(b)(1) argument, Temescal entirely ignores the Defendants' personal jurisdiction arguments in its oppositions to the Defendants' respective motions. This Court has consistently held that by failing to respond to an argument made in a motion to dismiss, a plaintiff abandons his or her claim. See O'Reilly v. Tsottles, No. GLR-18-

3622, 2021 WL 424415, at *7 (D.Md. Feb. 8, 2021) (citing cases). Accordingly, Temescal has failed to allege that this Court has personal jurisdiction over Defendants Voegler and Heyman.

### 3.      Failure to State a Claim

Even if Temescal had properly plead jurisdiction, Temescal's claims against Defendants Cassese, Heyman, and Voegler are subject to dismissal for failure to state a claim. The Court addresses each cause of action in turn.

#### a.      Breach of Contract

In its Complaint, Temescal asserts a claim for breach of contract against Defendants Faces and Cassese (Count I). "To state a claim for breach of contract, the plaintiff must show that the defendant owed him a contractual obligation and that the defendant breached that obligation." All Weather, Inc. v. Optical Sci., Inc., 443 F.Supp.3d 656, 666 (D.Md. 2020) (citing Thaler v. Donald J. Trump for President, Inc., 304 F.Supp.3d 473, 477 (D.Md. 2018)). Further, "[t]he claim must 'allege with certainty and definiteness facts showing a contractual obligation.'" Yarn v. Hamburger L. Firm, LLC, No. RDB-12-3096, 2014 WL 2964986, at *3 (D.Md. June 30, 2014) (quoting RRC Ne., LLC v. BAA Md., Inc., 994 A.2d 430, 442 (Md. 2010)).

Cassese argues in his Motion to Dismiss that Temescal does not allege in its Complaint that he was a party to an agreement with Temescal or that he materially breached any agreement. (Def. Cassese Mot. Dismiss at 4). Further, Cassese argues that Temescal does not raise a theory of personal liability as to any agreement between Faces and Temescal. (Id.). Temescal responds that Cassese was a party to the contract with Faces and

that Cassese breached that agreement by failing to properly process payroll, among other things. (Resp. Opp'n Def. Cassese's Mot. Dismiss ["Temescal's Opp'n Cassese Mot."] at 3). Temescal further alleges that Cassese "orchestrated and approved" the breach for his personal benefit. (Id.). Temescal does not address Cassese's argument regarding personal liability in its Opposition. (See id. at 3–4).

Temescal's claim for breach of contract against Cassese is insufficient. In its Opposition, Temescal cites to its Complaint and argues that it properly alleges that Cassese was a party to the contract. But the Complaint does not say what Temescal now asserts. Temescal cites to paragraphs two, eight, and fourteen, which state as follows:

> 2. Faces is a payroll company which processed the payroll of the Plaintiff between March 1, 2018 and September 2018, having served numerous clients around the United States. Pursuant to Faces['] contractual relationship with Plaintiff, Faces was to process the payroll of the Plaintiff, move approved funds from the Plaintiff to the Faces account(s) and from the Faces account(s) pay employees' taxes to the State and Federal Governments, pay employee benefits as directed and to initiate direct deposits to the bank accounts of Plaintiff's employees.
>
> . . . .
>
> 8. Cassese is a citizen and resident of Englewood, Colorado and is the CEO/Manager of Faces.
>
> . . . .
>
> 14. Each individual defendant was the agent, servant and/or employee of each other defendant, and in connection with the conduct herein alleged, was acting within the course and scope of such agency, and that each defendant ratified each and every act or omission and by each and every defendant.

(Compl. ¶¶ 2, 8, 14). Temescal then cites to paragraphs in its Complaint indicating that "Temescal and <u>Faces</u> entered into an agreement ("Agreement") to process payroll," that Faces agreed to process its payroll, and that Faces breached the contract by, among other things, "[f]ailing to pay the State and Federal employee taxes." (<u>Id.</u> ¶¶ 25, 27–28) (emphasis added). Nonetheless, Temescal argues in its Opposition that it "detailed the agreement between [Temescal] and Cassese." (Temescal's Opp'n Cassese Mot. at 3).

Even construing the factual allegations in the light most favorable to the plaintiff, the Court cannot find support for Temescal's allegations. At best, Temescal may be implicitly relying on paragraph fourteen of its Complaint, which alleges that Cassese was an agent of Faces. (<u>Id.</u>; Compl. ¶ 14). But paragraph fourteen is a sweeping, generalized legal conclusion that asserts equal responsibility among each individually named Defendant for the contract between Temescal and Faces. "A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 555). Legal conclusions in a complaint are permissible when they are supported by "well-pleaded factual allegations." <u>Id.</u> The Court is not, however, "bound to accept as true a legal conclusion couched as a factual allegation." <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 555). Here, paragraph fourteen is a legal conclusion unsupported by factual allegations and, as such, is not entitled to the assumption of truth.

Additionally, Temescal's allegation in its Complaint that Cassese "orchestrated and approved of this theft, for the benefit of Faces, and for his own personal benefit" is similarly insufficient. (Compl. ¶ 29). Temescal does not offer any facts suggesting that Cassese

15

participated in or benefitted from Faces' failure to pay State and Federal taxes on behalf of Temescal's employees. Moreover, because Faces is a limited liability company, Cassese can only be responsible for Faces' contractual obligations if he was personally liable to the contract. See Balt. Line Handling Co. v. Brophy, 771 F.Supp.2d 531, 544 (D.Md. 2011). Temescal offers only a bare assertion that Cassese is liable under the contract, a "conclusion[] masquerading as [a] factual allegation[]." Id. (holding that a plaintiff who provided "bare assertions" to support an allegation of personal liability failed to meet the pleading requirements under Iqbal and Twombly). Temescal fails to include a factual basis for Cassese's personal liability for breach of contract in its Complaint and moreover neglects to address personal liability in its Opposition. Temescal's claim for breach of contract is subject to dismissal as to Defendant Cassese.

### b. Fraud

Temescal asserts a claim for fraud against Defendants Faces and Cassese (Count II). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). In order to meet this heightened pleading standard, a plaintiff "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." My Nat'l Tax & Ins. Servs., Inc. v. H&R Block Tax Servs., Inc., 839 F.Supp.2d 816, 818 (D.Md. 2012) (quoting United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008)). "These facts are often referred to as the 'who, what, when, where, and how' of the alleged fraud." Id.

Temescal alleges in its Complaint that Cassese's "continued theft of Temescal's money without making the requisite Federal and State tax deposits included the conversion of Temescal's employee payroll to [his] own benefit[] and use." (Compl. ¶ 32). It then alleges that "[a]fter [his] unlawful and improper acts were discovered, . . . Cassese represented that the stolen money would be reimbursed," and that Temescal has never been reimbursed for the "stolen" money. (Id. ¶ 34). Temescal refers to Cassese's "false representations and multiple concealments," "multiple communications," and "intentional misrepresentations" and asserts that those representations caused it to suffer damages. (Id. ¶¶ 35–39). Like Temescal's breach of contract claim, Temescal fails to provide any factual basis for these assertions. At best, Temescal indicates that "[f]rom July 2019 through December 2019, Defendants, collectively, spoke with Temescal and, multiple times, Defendants promised to repay the stolen money." (Id. ¶ 21). Temescal provides no additional information to shed light on the communications that took place within that six-month window—it offers no dates or specific parties, nor does it provide the substance or methods of the communications. Its contention that Cassese engaged in "concealments" and "misrepresentations" is therefore unsupported, leaving the Court unable to discern the basic "who, what, when, where, and how" of the alleged fraud. Temescal fails to meet the pleading requirements under Federal Rule of Civil Procedure 9(b) and accordingly, Temescal's fraud claim is subject to dismissal.

>        c.      **Conversion**

Temescal asserts a claim for conversion against all Defendants (Count III). Under Maryland law, conversion consists of two elements, "a physical act combined with a certain

state of mind." <u>Ark. Nursing Home Acquisition, LLC v. CFG Cmty. Bank</u>, 460 F.Supp.3d 621, 646 (D.Md. 2020) (quoting <u>Neal v. Pentagon Fed. Credit Union</u>, No. ELH-18-451, 2018 WL 5786119, at *19 (D.Md. Nov. 5, 2018)). The physical component requires "any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it." <u>Id</u>. The intent element involves "an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights." <u>Id</u>. Therefore, for a plaintiff to successfully state a claim for conversion, he must allege that "he . . . had a property interest in property that was allegedly converted." <u>Id</u>. (quoting <u>Brass Metal Prods., Inc. v. E-J Enters.</u>, 984 A.2d 361, 378 (Md.Ct.Spec.App. 2009)).

Money "is generally not subject to conversion claims." <u>Id</u>. An exception exists, however, for "specific segregated or identifiable funds." <u>Allied Inv. Corp. v. Jasen</u>, 731 A.2d 957, 966 (Md. 1999). Here, Temescal seeks repayment of the $115,000 it alleges Faces was bound to pay the State and Federal government for taxes under the agreement. However, Temescal does not allege that the money is in the form of "specific funds that are being held separate and apart." <u>See</u> <u>Johnson v. Wheeler</u>, 492 F.Supp.2d 494, 510–11 (D.Md. 2007). Accordingly, Temescal has failed to properly plead a claim for conversion of money under Maryland law. Accordingly, Count III fails to state a claim for which relief may be granted.

### d.   Unjust Enrichment

Temescal asserts a claim for unjust enrichment against all Defendants. Under Maryland law, unjust enrichment has three elements:

> (1) A benefit conferred upon the defendant by the plaintiff; (2) An appreciation or knowledge by the defendant of the benefit; and (3) The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.

Diane Sales, Inc. v. Am. Express Centurion Bank, No. GLR-14-1063, 2014 WL 11429026, at *3 (D.Md. July 14, 2014) (quoting Hill v. Cross Country Settlements, LLC, 936 A.2d 343, 351–52 (Md. 2007)). "[T]he classic measurement of unjust enrichment damages is the gain to the defendant, not the loss by the plaintiff." Wash. Cnty. Bd. Educ. v. Mallinckrodt ARD, Inc., 431 F.Supp.3d 698, 717–18 (D.Md. 2020) (quoting Mogavero v. Silverstein, 790 A.2d 43, 53 (Md.Ct.Spec.App. 2002)). In support of its unjust enrichment claim, Temescal alleges that "Defendants diverted [] $115,000 directly from Temescal to accounts owned and controlled by Defendants," and that, as a result, Defendants were "unjustly enriched" by retaining that money. (Compl. ¶¶ 48–49).

This Court has held that it is not clear "whether it is permissible under Maryland law for a suit to consist of a single claim of unjust enrichment without an accompanying underlying tort." Wash. Cnty., 431 F.Supp.3d at 718. "As a matter of practice," courts tend "to dismiss an unjust enrichment claim if the court concludes the plaintiff has not stated a claim for tortious conduct." Id. (citing State Farm Mut. Auto. Ins. Co. v. Carefree Land Chiropractic, LLC, No. CCB-18-1279, 2018 WL 6514797, at *4 (D.Md. Dec. 11, 2018)). As no underlying tort alleged by Temescal survives as to these Defendants, Count IV fails to state a claim against Defendants Cassese, Heyman, and Voegler.

####     e.        Civil Conspiracy

Finally, Temescal asserts a claim for civil conspiracy against all Defendants. A civil conspiracy is "a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or means employed must result in damages to the plaintiff." Ark. Nursing Home, 460 F.Supp.3d at 647 (quoting BEP, Inc. v. Atkinson, 174 F.Supp.2d 400, 408 (D.Md. 2001)). There is no distinct tort for civil conspiracy; rather, "a civil conspiracy theory merely serves to extend liability to the co-conspirators after some other tortious conduct is established." Id. (citing McDaniel v. Maryland, No. RDB-10-189, 2010 WL 3260007, at *11 (D.Md. Aug. 18, 2010)). Pleading civil conspiracy in a separate count "as if it were a 'cause[] of action independent of an underlying tort'" is improper. Id. (quoting Manikhi v. Mass Transit Admin., 758 A.2d 95, 110 n.6 (Md. 2000)). Count V is meant to expand liability surrounding Temescal's tort claims and therefore should have been included in Temescal's earlier counts. In any event, Temescal fails to state a claim in Count V for two reasons. First, the Complaint merely alleges the existence of a conspiracy in a conclusory fashion. Temescal does not describe how the Defendants conspired with each other or that the Defendants entered into a common agreement or understanding. There are no facts offered to show how these individuals and entities coordinated or conspired with one another to bring about the allegedly unlawful retention of payroll funds.

Second, as explained above, there is no surviving tort claim to which Temescal may attach its civil conspiracy claim. Accordingly, Count V is subject to dismissal.[5]

## III.   CONCLUSION

For the foregoing reasons, the Court will grant Defendant Francis Voegler's Motion to Dismiss (ECF No. 40) and denies Defendants Christopher Cassese and Gareth Heyman's Motions to Dismiss (ECF Nos. 33, 39) as moot. The Court will also dismiss Temescal's claims against all Defendants for lack of jurisdiction. A separate Order follows.

Entered this 4th day of October, 2021.


                                    /s/
                            _____
                            George L. Russell, III
                            United States District Judge

---

[5] The Court recognizes that Defendant Voegler requests sanctions in his Reply. (Def. Voegler's Rep. Mem. Law Supp. Mot. Dismiss at 5–7). Although Temescal's filings are inadequate, the Court declines to impose sanctions under Rule 11(b) and (c). Nonetheless, counsel for Temescal are warned that even though the Court, in its discretion, is not issuing sanctions, it would not be inappropriate to do so. See W. Md. Wireless Connections v. Zini, 601 F.Supp.2d 634, 645 (D.Md. 2009) (finding that a party's opposition to a motion for summary judgment was sanctionable under Rule 11 where it "advocate[d] and reaffirm[ed] frivolous claims from the complaint" and "misrepresent[ed] material facts").